IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

RANDALL B.,[1]

          Plaintiff,

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

Case No. 1:23-cv-00142-HL

**OPINION AND ORDER**

_____

HALLMAN, United States Magistrate Judge:

      Plaintiff Randall B. brings this action under the Social Security Act (the "Act"), 42

U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social

Security ("Commissioner"). The Commissioner denied Plaintiff's application for Disability

Insurance Benefits ("DIB") under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the following

reasons, the decision of the Commissioner is AFFIRMED.

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name
for non-governmental parties and their immediate family members.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

### I.    Plaintiff's Application

Plaintiff alleges disability based on "gout, knee problems, heart problem, respiratory problem, and [high blood pressure]." Tr. 185.[2] At the time of his amended alleged onset date, he

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 9).

was 53 years old. Tr. 185, 529. He has not completed high school. Tr. 155-56, 535. He has past relevant work as an autobody worker and a painter. Tr. 33.

Plaintiff protectively applied for DIB on November 27, 2015, alleging an onset date of January 1, 2012. Tr. 185. His application was denied initially on February 11, 2016, and on reconsideration on June 27, 2016. Tr. 194, 1206. Plaintiff subsequently requested a hearing, which was held on April 5, 2018, before Administrative Law Judge ("ALJ") Steven De Monbreum. Tr. 112-183. On May 30, 2018, ALJ De Monbreum issued a decision denying Plaintiff's claim. Tr. 220-21. Plaintiff requested Appeals Council review who then remanded the decision to the ALJ. Tr. 226-31, 328-32.

Upon remand, Plaintiff appeared and testified at a hearing held on November 13, 2020, before ALJ Mark Triplett. Tr. 81-111. On December 21, 2020, the ALJ issued a decision denying Plaintiff's claim. Tr. 248-49. Plaintiff requested Appeals Council review who then remanded the decision to the ALJ. Tr. 256-61.

On April 25, 2022, Plaintiff amended his alleged onset date to April 16, 2023. Tr. 529. Again, upon remand, Plaintiff appeared and testified at a hearing held on June 15, 2022, before ALJ Triplett. Tr. 45-90. A vocational expert ("VE"), Vernon Arne, also testified. Tr. 70-79. On July 18, 2022, the ALJ issued a decision denying Plaintiff's claim. Tr. 34-35. Plaintiff requested Appeals Council review, which was denied on September 9, 2022. Tr. 1-6. Plaintiff then sought review before this Court.[3]

---

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 8).

## II.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant

can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the

Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other

work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§

404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not

disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.    The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity during the period from his alleged onset date of January 1, 2012, through his date last

insured of March 31, 2014. Tr. 16, 34, 529

At step two, the ALJ determined that Plaintiff's only severe impairment was degenerative

disc disease of the cervical spine. *Id.*

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically

equal the severity of a listed impairment. Tr. 18. The ALJ then resolved that Plaintiff had the RFC

to do light work with the following limitations:

> He could occasionally climb ramps and stairs, but could never climb ladders, ropes,
> or scaffolds; [he] could occasionally kneel and crouch, but could never crawl; [he]
> could occasionally operate foot controls bilaterally; [he] could occasionally reach
> overhead bilaterally; [he] could tolerate occasional exposure to pulmonary irritants;
> [he] could tolerate no exposure to workplace vibration or hazards, such as
> unprotected heights and exposed, moving machinery; and [he] require[s] the ability
> to sit or stand at will while remaining on task.

Tr. 19.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.

Tr. 33.

But at step five—considering Plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as a wireworker, bench assembler, and small products assembler. Tr. 34. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 34-35.

## DISCUSSION

Plaintiff argues that the ALJ committed three errors: (1) failing to provide clear and convincing reasons to reject Plaintiff's symptom testimony; (2) improperly weighing medical opinion evidence that would preclude Plaintiff from sustaining full-time work; and (3) failing to provide clear and convincing reasons to reject the lay witness' testimony. For the reasons discussed below, the Commissioner's decision denying Plaintiff's claim is affirmed.

## I.    Subjective Symptom Testimony

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons to reject his symptom testimony that he could not work full-time due to his physical impairments. Pl.'s Opening Br. 12-16. Specifically, Plaintiff contends that the objective medical evidence the ALJ relied on does not provide a proper basis for discounting his testimony. *Id*. at 13-15. Plaintiff also contends that it was improper for the ALJ to "suppor[t] his reasoning largely with a focus on evidence related to [Plaintiff's] methamphetamine use." *Id.* at 15-16.

### A.    Legal Standards

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

**B.    Plaintiff's Testimony**

Plaintiff testified that he was laid off in 2010 because he developed gout in his knees and feet, and was unable to stand for very long. Tr. 126-27, 130; *see also* Tr. 62-63. He testified that between 2012 and 2014, he experienced a gout attack at least every other month, each typically lasting a week or two in duration. Tr. 131-32; *see also* Tr. 154, 96. Plaintiff alleges there was a period of three months where he ambulated by crawling and used a walker due to his gout. Tr.

63, 68, 96. Plaintiff testified that he used a walker "probably 35% of the year" during that time. Tr. 97; *see also* Tr. 100-02, 60-62, 69. Plaintiff testified that he also experienced lower back and neck pain between 2012 and 2014, and during that time, he was limited to standing for less than one hour. Tr. 147-48. Plaintiff explained that during that time period, the arthritis in his shoulder was "just then coming on" and he had difficulty holding the paint sprayer he used to paint cars due to the pain in his shoulders. Tr. 148, 153, 94-95, 97-98. Plaintiff testified that he attempted to do autobody work in 2012, but was limited by his shoulders and hips, and he had to alternate between sitting on a stool and standing because of his back. Tr. 93-95. Plaintiff stated he spent most of the workday sitting. Tr. 95. Plaintiff testified that he tried to do "side jobs" for about ten to fifteen hours per month. Tr. 65-66. Plaintiff explained that these jobs were mostly done in a seated position and his son helped him. Tr. 66.

The ALJ determined that his medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 21. Specifically, the ALJ discussed Plaintiff's work history and the objective medical evidence when discounting his subjective symptom testimony. Tr. 21-27.

### C.    Contradictory Medical Evidence

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *see also Smartt*, 53 F4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). While an ALJ may also consider the lack of corroborating

objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3rd at 681)).

Here, the ALJ concluded that Plaintiff's testimony regarding his physical impairments and his need to use an assistive device were not consistent with the medical record. Tr. 19-25. Regarding his gout, Plaintiff testified that he had "gout attacks" that occurred "at least every other month between 2012 and 2014. Tr. 132. However, the ALJ discounted this testimony explaining that "the record documents gout flairs occurring in approximately April 2012 (per [Plaintiff's] report), as of his amended alleged onset date in April and May 2014, in November 2013, and in October 2014." Tr. 25 (citing Tr. 689-91, 756, 763-67, 929). The ALJ also indicated that the record does not support Plaintiff's testimony that his gout has made him rely on an assistive devices. *Id.* The ALJ reasoned that Plaintiff was not observed as using an assistive device or recommended for use of an assistive device at any of his gout related appointments throughout the adjudicatory period. *Id.* The ALJ discussed how in April 2013, hospital records noted that Plaintiff was using a walker while seeking a refill for his Percocet prescription, but the records did not indicate that "he was assessed as requiring an assistive device at that time." Tr.

27 (citing Tr. 730-34). The ALJ also cited medical records from 2015 and 2016 where Plaintiff was discharged from the hospital and instructed to maintain activity as tolerated and be independent in his care. Tr. 25 (citing Tr. 798, 820). The ALJ found that "there are essentially no references to use of a walker in the treatment records until February 2020, related to development of right hip osteoarthritis" *Id.* (citing Tr. 1432). Substantial evidence supports the ALJ's conclusions that Plaintiff's testimony was inconsistent with his medical findings, and he did not err in discounting the testimony.

### D. Activities of Daily Living

The ALJ properly relied on Plaintiff's work activity when discounting his testimony that he is unable to sustain fulltime work. The ALJ relied on the fact that Plaintiff was performing autobody work and painting cars after the amended alleged onset date and well past the date last insured. Tr. 27. The ALJ also found it "notable that [Plaintiff's] representative stated at the hearing that [Plaintiff] had amended the alleged onset date to April 2013, in part because of references in the record to him owning his own automotive shop and engaging in autobody work and using a pressure painter for auto painting prior to this time." *Id.* (citing Tr. 657-61, 703-04, 796-808, 914, 979-80, 985, 1029). The ALJ also cited a treatment note from 2017 where Plaintiff reported to Dr. Wilson that he was "still painting cars for a living." *Id.* (citing Tr. 1029). The ALJ was entitled to rely on this work activity along with other contemporaneous records to discount his testimony. *See Ford*, 950 F.3d at 1156 ("ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled.").[4]

---

[4] The Commissioner argues that Plaintiff waived any challenge to the ALJ's decision to discount symptom testimony based on anything besides Plaintiff's symptoms of relying on an assistive device and his methamphetamine use Def.'s Br. 15 (citing *Deluca v. Berryhill*, 721 Fed. App'x 608, 610 (9th Cir. 2017) and *Carmickle*, 533 F.3d at 1161.)) Because this Court finds the ALJ

E.        **Plaintiff's Methamphetamine Use**

Lastly, Plaintiff asserts the ALJ's reasoning for discounting his subjective symptom testimony was largely focused on evidence related to his methamphetamine use. Pl.'s Br. 15. Plaintiff explains that the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead must assess whether Plaintiff's subjective symptom testimony is consistent with the record. *Id.* (citing SSR 16-3p, *available at* 2016 WL 1119029). Plaintiff acknowledges that evidence of dishonesty regarding drug use can be relevant when it supports the inference that a claimant may have exaggerated their symptoms to obtain medication. *Id.* (citing *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001)). However, Plaintiff argues there is no indication that Plaintiff exaggerated his condition to obtain methamphetamine. *Id.* Plaintiff asserts "if anything, [Plaintiff's] substance abuse history would require further legal analysis to determine whether his limitations would remain without drug or alcohol abuse ("DAA")." *Id.* at 16 (citing 20 C.F.R § 404.1535 and SSR 13-2p, *available at* 2013 WL 621536).

The ALJ discussed Plaintiff's testimony from the 2022 hearing where Plaintiff stated he was "clean and sober for several years," but relapsed in 2016. Tr. 22, 63. However, the ALJ noted that medical records revealed repeated toxicology tests that were positive for methamphetamines from 2014 to 2020. Tr. 22 (citing Tr. 817, 821, 928, 1352, 1433, 1439, 1545, 1816, 2013). The ALJ also discussed medical records where Plaintiff exhibited drug seeking behavior since 2013. Tr. 21-22 (citing Tr. 689-90, 724-26, 762-67, 796, 910, 1029; *see also* Tr. 929). A treatment note cited by the ALJ states that "the longer [Plaintiff] stays in the

provided clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony, it need not decide the question of waiver.

[emergency] department, the more he displays drug-seeking type behaviors." *Id.* (citing Tr. 726). The ALJ also discussed how in April 2013, Plaintiff left the emergency department against medical advice. Tr. 24 (citing Tr. 733). A treatment note from the emergency department indicates that Plaintiff presented using a walker and was asking for his Percocet prescription to be refilled and when his request was declined, and he left against medical advice. Tr. 730-733.

At this point in April 2013, Plaintiff's walker was not "medically required." The Social Security regulations provide that the use of a hand-held assistive device such as a cane is a functional limitation only if it is medically required. *See* SSR 96-9p, 1996 WL 374185, at *7 ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed. . . "). As already discussed, the medical records show Plaintiff's first medically required use for a walker occurred in February 2020. Tr. 1432. The ALJ also discussed that the following day, Plaintiff presented to his primary care provider requesting Percocet, which his provider declined to refill. Tr. 24 (citing Tr. 689-91). When his primary care provider offered him alternative pain relievers, Plaintiff declined. *Id.* These medical visits in 2013 supports the inference that Plaintiff may have exaggerated his symptoms by using a walker that was not medically required in order to obtain Percocet, especially given that his assistive device use was not consistent after this medical visit. *Edlund*, 253 F.3d at 1157. The ALJ validly discredited Plaintiff's testimony about his pain and need for an assistive device by discussing objective medical evidence, and on occasion the objective medical evidence was related to him using an assistive device while also exhibiting drug seeking behaviors and his inconsistent statements to providers. Thus, the ALJ did not simply examine his character and overall truthfulness, as Plaintiff contends.

Even if the ALJ had incorrectly emphasized Plaintiff's methamphetamine use, he adequately discredited Plaintiff's subjective symptom testimony based on his work history and inconsistencies with the objective medical evidence. These were "specific, clear and convincing reasons" for rejecting Plaintiff's testimony, which is sufficient to affirm the ALJ's findings. *Vasquez*, 572 F.3d at 591 (quoting *Smolen v. Charter*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

## II.    Medical Opinion Evidence

Plaintiff argues the ALJ improperly rejected the medical opinions given by his treating physician, John Wilson, M.D., without providing legally adequate reasons for doing so. Pl.'s Opening Br. 5.

### A.    Standard of review.

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted).[5] "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas*, 278 F.3d at 957). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence [in the record].'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

---

[5] For disability benefit applications filed prior to March 27, 2017, such as Plaintiff's, the prior rules concerning medical opinion evidence apply.

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.' " *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citation omitted).

### B.    Analysis.

Dr. Wilson began treating Plaintiff in May 2014, within two months of Plaintiff's date last insured. Tr. 935-39. Dr. Wilson provided one medical assessment in 2018, and two treating source statements in 2020 and 2022. Tr. 1086-1090, 1300-08, 2284-88. In the February 2018 medical assessment, Dr. Wilson reported that he had provided treatment for Plaintiff's congestive heart failure, pulmonary hypertension, chronic obstructive pulmonary disease ("COPD"), asthma, gout, stage 3 chronic kidney disease, drug addiction, hypertension, sleep apnea, type 2 diabetes, and vitamin D deficiency. Tr. 1087. Dr. Wilson opined that Plaintiff would be off task for more than 25% of the workday and that he would be absent more than four workdays per month. *Id.* He opined that Plaintiff could maintain attention and concentration for less than fifteen minutes before needing a break due to pain symptoms and medication side effects. *Id.* Dr. Wilson indicated that Plaintiff could lift twenty pounds occasionally and ten pounds frequently. Tr. 1088. He also indicated that Plaintiff requires opportunities to sit and

stand at will, elevate his legs when sitting, and lie down for twenty to thirty minutes every hour. *Id.* Dr. Wilson stated that Plaintiff needs to use a cane when ambulating more than half a block. Tr. 1088-89. When asked to "identify the particular medical or clinical findings which support your assessment of limitations and the findings support the assessment," Dr. Wilson indicated that he relied on Plaintiff's own reports to support his assessment regarding Plaintiff's use of hands, use of feet, and the need for assistive devices. Tr. 1089-90.

The ALJ gave "little weight" to the February 2018 medical assessment. Tr. 30. The ALJ reasoned that Dr. Wilson's opinions were largely based on Plaintiff's self-report rather than objective medical evidence. Tr. 30-31. Specifically, the ALJ explained that "with the exception of his opinion regarding [Plaintiff's] abilities to lift, carry, stand, walk and sit, Dr. Wilson cited the basis for the stated limitations [and] restrictions was [Plaintiff's] self-report." Tr. 30. The ALJ reasoned the Dr. Wilson's "repeated reliance on [Plaintiff's] self-reports . . . cannot be accepted, given the overwhelming evidence showing [Plaintiff's] subjective reports cannot be depended on." *Id.* The ALJ found that it is unclear which limitations are derived from objective medical testing and which are "simply re-statements of [Plaintiff's] self-reported limitations." *Id.* The ALJ also expressed that Dr. Wilson's opinion was prepared four years after the date last insured and provides no indication as to what symptoms and limitations were present during the relevant period. *Id.* Lastly, the ALJ discussed how "Dr. Wilson did not address [Plaintiff's] issues of noncompliance and the effect of his ongoing use of methamphetamines." *Id.*

In September 2020, Dr. Wilson provided an updated treating source statement. Tr. 1300-1308. Dr. Wilson opined mostly the same limitations as he did in February 2018, however, there were some areas where he identified greater limitations. For instance, Dr. Wilson opined that Plaintiff was able to maintain attention and concentration for less than five minutes before

requiring a break. Tr. 1300. He opined that Plaintiff could rarely lift less than ten pounds, and

never lift more than ten pounds. Tr. 1301. Dr. Wilson indicated that Plaintiff needs to lie down

for 30 minutes every ten minutes. *Id.* Dr. Wilson stated that Plaintiff needs to use crutches or a

wheelchair to ambulate due to osteonecrosis of the hip. Tr. 1301-02.

  The ALJ similarly gave little weight to Dr. Wilson's treating source statement from

September 2020. Tr. 30. The ALJ acknowledged Dr. Wilson's treatment of Plaintiff's

subsequently diagnosed conditions. *Id.* The ALJ also acknowledged that the record shows

Plaintiff reported new onset right hip pain that started in January 2020, but reasoned there is no

reasonable basis for finding Plaintiff' hip pain limitations were present during the relevant

period. *Id.* The ALJ once again expressed that Dr. Wilson "did not provide clarification as to

when he considered his opinion applied and did not address the effect of [Plaintiff's] ongoing

methamphetamine abuse on his conditions." *Id.*

  In May 2022, Dr. Wilson provided another updated treating source statement. Tr. 2284-

88. Dr. Wilson reported that he treated Plaintiff three to four times a year for the past eight years.

Tr. 2284. Dr. Wilson opined mostly the same limitations as he did in February 2018 and

September 2020, however, he did identify some differing limitations. Dr. Wilson opined that

Plaintiff needs to lie down and rest for fifteen minutes every hour due to pain in his legs, hips,

and back. Tr. 2285. Dr. Wilson further opined that Plaintiff would require a ten-minute break

after using his hands to perform handling or fingering activities. Tr. 2287. He indicated that

Plaintiff could sit for sixty minutes at a time for a total of two hours in an eight-hour workday.

Tr. 2286. Dr. Wilson explained that Plaintiff needs a job that would allow him to shift positions

at will from sitting, standing, or walking. *Id.* Of note, Dr. Wilson opined that these limitations

had been present since at least March 31, 2014, and noted that Plaintiff's pain had been present since 2012 but was masked with medication until it became too severe for him to work. Tr. 2288.

The ALJ found Dr. Wilson's May 2022 treating source statement unpersuasive. Tr. 31. The ALJ reasoned that it was an "illogical conclusion" for Dr. Wilson to have assessed progressively increased limitations from 2018 to 2022 while also asserting that these most restrictive limitations have been present since at least March 31, 2014, more than seven years earlier. *Id.* The ALJ found Dr. Wilson's statement that Plaintiff's pain has been present since 2012 and was masked by medication both inconsistent with treatment records dating back to 2011, and Dr. Wilson's own treatment records. *Id.* The ALJ reasoned it is "notable from Dr. Wilson's opinions that [Plaintiff's] episodic gout flares are not cited as a basis for any significant functional limitations, and that [Plaintiff] was not diagnosed with any knee impairment or inflammatory arthritis." *Id.*

This Court finds that the ALJ provided specific and legitimate reasons for rejecting Dr. Wilson's opinions. *Ghanim*, 763 F.3d at 1161. As discussed above, the ALJ noted that all three opinions were completed after Plaintiff's date last insured. Tr. 30-31. The ALJ may assign less weight to the opinion of a medical source who examines a claimant after the relevant period. *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996). Here, the ALJ acknowledged that Dr. Wilson began treating Plaintiff only two months after his date last insured, and that he relied on Plaintiff's subjective reports from May 2014 until May 2022 to assess Plaintiff's level of functioning during the relevant period. As discussed above, the ALJ properly rejected Plaintiff's subjective symptom testimony as unpersuasive regarding the nature and extent of his limitations. The timing of Dr. Wilson's assessment and its reliance on Plaintiff's subjective reports regarding his past limitations constitutes a specific, legitimate reason for rejecting Dr. Wilson's

opinion. *Macri*, 93 F.3d at 545. On this record, the ALJ provided legally sufficient reasons for rejecting Dr. Wilson's opinions. *Ghanim*, 763 F.3d at 1161.

### III.    Lay Witness Testimony

Lastly, Plaintiff contends that the ALJ improperly discounted lay witness testimony from his wife, niece, and son, Pl.'s Opening Br. 13-16, which was contrary to the standard that an ALJ must provide "germane" reasons for discounting lay witness testimony. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The Court disagrees.

Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina*, 674 F.3d at 1114 (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id*. (citation and internal quotation omitted). However, failure to discuss or weigh third-party testimony is harmless where the ALJ validly discounts similar evidence. *See id*. at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").

Plaintiff's wife, Jessie B., reported that she has lived with Plaintiff since 2012 and that she has been taking care of him "pretty much the whole time" due to his conditions. Tr. 647, 649. She indicated that Plaintiff has been unable to work due to difficulties with his shoulders and hips, and she explained that he has problems raising his arms over his heads and at times, he has been unable to walk due to gout. *Id*. The ALJ found her lay witness testimony was inconsistent with Plaintiff's own reports as of January 2012 that he was living alone and able to attend to personal care and activities of daily living independently. Tr. 32 (citing Tr. 556-63). The ALJ also explained that Jessie B.'s reports were "vague" and "while she repeatedly refers to 2012, the

record does not document the existence of some of the conditions she mentions until well after the date last insured and does not support the level of limitations she described." *Id*. Contradictory testimony with other evidence in the record is another acceptable basis for rejecting lay witness testimony. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ correctly cited contradictory testimony with evidence in the record showing Plaintiff was independent with his activities of daily living during the relevant period. Tr. 32. Therefore, the ALJ provided a reason germane to this witness and therefore did not err in rejecting her testimony.

Plaintiff's niece, Michelle B. reported that she has observed Plaintiff's decreasing health since 2009. Tr. 653. She reported that Plaintiff has had trouble standing for longer periods of time since 2011 due to gout, and that he has mobility problems due to hip pain. *Id*. She noted that his family helps him do laundry, grocery shop, cook, and that his son has helped him with showering and dressing. *Id*. Michelle B. also indicated that there have been periods where Plaintiff was unable to walk more than a few steps due to shortness of breath. Tr. 654. She also reported that in March 2014, Plaintiff was using a wheelchair, needed help with household chores, paying bills, and needed reminders for his appointments. Tr. 655. The ALJ found that "the objective evidence does not corroborate this level of impairment through the date last insured." Tr. 32. In rejecting lay testimony, "[i]nconsistency with medical evidence is one such reason." *Bayliss v. Bayhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). As already discussed, the ALJ determined that there are essentially no references to a medically necessary use of an assistive device in the treatment records until February 2020 which is inconsistent with Michelle B.'s reports that he was using a wheelchair as early as March 2014. The ALJ provided a reason germane to this witness and did not err in discounting her lay witness testimony.

Plaintiff's son, Branden B., provided a letter stating that Plaintiff has lived with him since 2019, noting that his health took a turn in 2012, and described Plaintiff's difficulties with gout, shortness of breath, and pain in his back, neck, and shoulders. Tr. 659. Branden B. explained that before coming to live with him, he needed to go to Plaintiff's house to help him. Branden noted that Plaintiff was "very healthy" and able to work prior to 2014. Tr. 660-61.

Plaintiff asserts the ALJ's evaluation of Branden's testimony is "selective." Pl.'s Opening Br. 20. Specifically, Plaintiff argues that Branden's report specifically states that Plaintiff began needing to recline to relieve back and hip pain, became short of breath with minimal activity, and required breaks if he walked for more than five minutes, which was left unaddressed by the ALJ. *Id*. (citing Tr. 660). The ALJ found that "although there is some lack of specificity, the undersigned finds this description of [Plaintiff's] medical history is a closer reflection of [Plaintiff's] conditions and abilities during the relevant adjudicatory period with later development of more severe conditions resulting in significant limitations, as is documented in the record." Tr. 33. Contrary to Plaintiff's assertions, the ALJ's evaluation of Branden's testimony is not "selective" nor did the ALJ discount this testimony. Instead, the ALJ explained that Branden's "description of [Plaintiff's] medical history is a closer reflection of [Plaintiff's] conditions and abilities during the relevant adjudicatory period, with later development of more severe conditions resulting in significant limitations." *Id*. The ALJ's analysis here is consistent with the medical record demonstrating that Plaintiff's impairments significantly worsened after the date last insured, and that he did not require a medically assistive device prior to the date last insured. Furthermore, Branden stated that Plaintiff was healthy and able to work prior to 2014. Tr. 660-61. Therefore, the ALJ did not err in evaluating Branden's testimony.

The ALJ provided germane reasons for discrediting the lay witness testimony from his wife and niece, and adequately addressed the testimony from his son. The ALJ accepted the lay witness' testimony that was consistent with the record of Plaintiff's work activities and objective medical evidence in the record, and the ALJ rejected portions of the testimony that contradicted other evidence in the record, or described Plaintiff's impairments long after the date last insured. The ALJ provided germane reasons for rejecting each lay witness' testimony that was inconsistent with the relevant evidence in the record.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court AFFIRMS the Commissioner's decision.

IT IS SO ORDERED.

DATED this 8th day of August, 2024.

_____
ANDREW HALLMAN
United States Magistrate Judge